O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
| --- | --- | --- | --- |
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
| --- | --- |

| Wendy K. Hernandez | Not Present | n/a |
| --- | --- | --- |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| --- | --- |
| Not Present | Not Present |

**Proceedings:**      **(In Chambers) Order Construing Patent Claims**

Pending before the Court are Plaintiffs' and Defendants' proposed *Markman* patent claims constructions. After considering the moving and opposing papers, as well as argument at the March 4, 2011 hearing, the Court construes the contested patent claims as follows.

I.      Background

On May 20, 2010, Plaintiffs Carson Cheng ("Cheng") and New Century Sci & Tech, Inc. (collectively "Plaintiffs") filed suit against Aim Sports, Inc., Guoping Cui, Ying Cui, Juan Covarrubias, Qingdao Amber Sports Co., LTD, ("QASCO"), Shangdong International Economic & Technical Development Co., LTD, ("SIET"), Combat Optical, Inc., and Micro World Corp. (collectively "Defendants") for patent infringement, unfair competition, and breach of fiduciary duty. *Compl.* ¶¶ 36, 43, 50, 57, 64, 71, 78, 84, 90, 95.

Plaintiffs are designers, developers, and wholesale distributors of firearm-related tools, accessories, and sporting optics. *Compl.* ¶¶ 13-14. Prior to December 2006, Defendants and Plaintiffs maintained a business relationship that allowed Defendants to obtain access to trade-secret information belonging to Plaintiffs. *Compl.* ¶ 19. Some of the trade-secret information involved manufacturing processes and information about product development of Plaintiffs' patented products that Defendants allegedly infringed. *Compl.* ¶ 19.

In June 2007, Plaintiffs commenced the first round of litigation in this Court against Defendants Aim Sports, Y. Cui and G. Cui, alleging, among other things, that they infringed a number of patents owned by Cheng. *Compl.* ¶ 28. That case was settled in July 2008 and the

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

suit was dismissed with prejudice.  *Compl.* ¶ 28.  Subsequently, AIM Sports, Y. Cui and G. Cui allegedly formed SIET and QASCO and continued to infringe upon Plaintiffs' patents in violation of the previous settlement agreement.  *Compl.* ¶¶ 29-33.

The parties have asked the Court to construe seven patents registered to Cheng: Utility Patent 6,754,987 (the "'987 Patent"), Design Patent D555,455 (the "'455 Patent"), Design Patent D598,723 (the "'723 Patent"), Design Patent D542,880 Patent (the "'880 Patent'"), Design Patent D555,750 (the "'750 Patent"), Design Patent D555,751 (the "'751 Patent"), and Design Patent D543,605 (the "'605 Patent").

II.    Legal Standard

"[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).

Also, the Federal Circuit has "frequently stated that the words of a claim are generally given their ordinary and customary meaning."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), *cert. denied*, 546 U.S. 1170, 126 S. Ct. 1332, 164 L. Ed. 2d 49 (2006) (citation omitted).  In fact, "the construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."  *Id.* at 1324.

The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Id.* at 1313 (citation omitted).  "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation."  *Id.* (citation omitted).  "That starting point is based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art."  *Id.* (citation omitted).  "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id.*

In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.  In such circumstances, general purpose dictionaries may be helpful.  In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art.  Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.  Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.

*Id.* at 1314 (internal citations and quotation marks omitted).

While considering the allowable sources of evidence to construe patent claims, a Court must consider the hierarchy of importance that the Federal Circuit has created for those sources of evidence.  First, "the context in which a term is used in the asserted claim can be highly instructive."  *Id.* at 1314.  Also, the Federal Circuit has made clear that claims "must be read in view of the specification, of which they are a part. ... [T]he specification is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."  *Id.* at 1315 (internal citation and quotation marks omitted).  Furthermore, although the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes," *id.* at 1317, it should also be considered and given great weight as "intrinsic evidence."  *Id.*  A Court may consider "extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Id.* (citation and internal quotation marks omitted).  However, while extrinsic evidence can shed useful light on the relevant art, it is less significant than the intrinsic record in determining the legally operative meaning of claim language.  *Id.*

A design patent in particular protects only "the novel, ornamental features of the patented design," not the functional elements.  *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) (citation omitted).  "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."  *Egyptian Goddess, Inc. v. Swisa, Inc.*,

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | | Date | April 14, 2011 |
|---|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | | |

543 F.3d 665, 680 (Fed. Cir. 2008) (en banc) (quotation omitted).   If a certain design "configuration is made imperative by the elements which it combines and by the utilitarian purpose of the device," it is functional and does not fall within the scope of a design patent.  *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988).  "If, on the other hand, 'there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose,'" and may be protected by an applicable design patent.  *Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046, 1049 (D. Ariz. 2009) *aff'd* 597 F.3d 1288 (Fed. Cir. 2010) (quoting *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993)).  When determining whether design patent protection exists, courts should also consider: "whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function."  *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997).

"In construing a design patent claim, the scope of the claimed design encompasses its visual appearance as a whole, and in particular the visual impression it creates."  *Contessa Foods Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2002) (internal quotation and citation omitted).  Generally, courts construing design patents should not "attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design."  *Egyptian Goddess*, 543 F.3d at 677; *see also Crocs Inc. v. Int'l Trade Com'n*, 598 F.3d 1294, 1302-03 (Fed. Cir. 2010) ("This court has cautioned, and continues to caution, trial courts about excessive reliance on a detailed verbal description in a design infringement case").  Instead, design patent construction is governed by drawings or other illustrations "adapted to a pictorial setting." *Crocs Inc. v. Int'l Trade Com'n*, 598 F.3d at 1302-03.

### III.   Discussion

Plaintiffs claim that the various elements of each article are purely ornamental, while Defendant insists that the various elements of each patented article are purely functional.  As a result, the Court separates the functional from the ornamental and finds that, to the extent the ornamental elements of the articles need construction, the designs themselves as represented in the illustrations contained in each patent are generally superior to any verbal description the Court can provide.  *See, e.g., Dexas Int'l, Ltd. v. Office Max, Inc.*, No. CV 07-396, 2009 WL 252164, at *4 (E.D. Tex. Jan. 30, 2009) (reaching a similar conclusion and noting that the "risks of undertaking such a description substantially outweigh the potential benefits in this case").

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

The Court construes each of the seven patents in turn.

      A.    <u>The 6,754,987 Patent</u>

      The parties do not dispute the following construction of the asserted claims in the '987 Patent, a patent covering a "magazine loader for ammunition preloaded with a stripper clip."  *See* Dkt. #58, Ex. 2 (Joint Claims Construction Statement); *see also Pl.'s Claims Construction Brief* 3:14-18.  As a result, the Court construes claims 1-24 of the '987 Patent as follows:

| **Claim** | **Construction and Support** |
|---|---|

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 1. A magazine loader for loading ammos in a magazine having an opening, comprising: a loading holder having a supplying opening end, an opposed discharging opening end, a feeding channel extended from said supplying opening end to said discharging opening end for slidably receiving the ammos, and a guiding arrangement provided within said feeding channel, wherein said discharging opening end of said loading holder is capable of detachably mounting on the opening of the magazine so as to alignedly communicate said feeding channel with the opening of the magazine; and an ammo pusher, having a pusher head, slidably engaged with said guiding arrangement to substantially guide said pusher head sliding from said supplying opening end of said loading holder to said discharging opening end thereof for pushing the ammos within said feeding channel of said loading holder into the magazine. | *The elements of this claim have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>1. A magazine loader for loading ammos in a magazine having an opening, comprising: a loading holder having a supplying opening end, an opposed discharging opening end, a feeding channel extended from said supplying opening end to said discharging opening end for slidably receiving the ammos, and a guiding arrangement provided within said feeding channel, wherein said discharging opening end of said loading holder is capable of detachably mounting on the opening of the magazine so as to alignedly communicate said feeding channel with the opening of the magazine; and an ammo pusher, having a pusher head, slidably engaged with said guiding arrangement to substantially guide said pusher head sliding from said supplying opening end of said loading holder to said discharging opening end thereof for pushing the ammos within said feeding channel of said loading holder into the magazine. |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 2. A magazine loader, as recited in claim 1, further comprising a striper clip slidably disposed in said feeding channel through said supplying opening end, wherein said striper clip is arranged for holding said ammos in position so as to guide said ammos within said feeding channel to align with said opening of said magazine. | *The elements of this claim, and the claim from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>2. A magazine loader, as recited in claim 1, further comprising a striper clip slidably disposed in said feeding channel through said supplying opening end, wherein said striper clip is arranged for holding said ammos in position so as to guide said ammos within said feeding channel to align with said opening of said magazine. |

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 3. A magazine loader, as recited in claim 1, wherein said guiding arrangement has at least two slider rails formed on two sidewalls of said loading holder to slidably engage with two side edges of said ammo pusher respectively, wherein each of said slider rails is extended from said supplying opening end of said loading holder to said discharging opening end thereof, so as to guide said pusher head of said ammo pusher to slide between said supplying opening end and said discharging opening end of said loading holder. | *The elements of this claim, and the claim from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>3. A magazine loader, as recited in claim 1, wherein said guiding arrangement has at least two slider rails formed on two sidewalls of said loading holder to slidably engage with two side edges of said ammo pusher respectively, wherein each of said slider rails is extended from said supplying opening end of said loading holder to said discharging opening end thereof, so as to guide said pusher head of said ammo pusher to slide between said supplying opening end and said discharging opening end of said loading holder. |

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|----------|----------------------|------|----------------|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 4. A magazine loader, as recited in claim 2, wherein said guiding arrangement has at least two slider rails formed on two sidewalls of said loading holder to slidably engage with two side edges of said ammo pusher respectively, wherein each of said slider rails is extended from said supplying opening end of said loading holder to said discharging opening end thereof, so as to guide said pusher head of said ammo pusher to slide between said supplying opening end and said discharging opening end of said loading holder. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>4. A magazine loader, as recited in claim 2, wherein said guiding arrangement has at least two slider rails formed on two sidewalls of said loading holder to slidably engage with two side edges of said ammo pusher respectively, wherein each of said slider rails is extended from said supplying opening end of said loading holder to said discharging opening end thereof, so as to guide said pusher head of said ammo pusher to slide between said supplying opening end and said discharging opening end of said loading holder. |

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 5. A magazine loader, as recited in claim 2, wherein said loading holder further has a guiding slot provided at a rear side of said feeding channel, wherein said striper clip is guided to slide along said guiding slot for ensuring said ammos retained in said feeding channel in position. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>5. A magazine loader, as recited in claim 2, wherein said loading holder further has a guiding slot provided at a rear side of said feeding channel, wherein said striper clip is guided to slide along said guiding slot for ensuring said ammos retained in said feeding channel in position. |
| 6. A magazine loader, as recited in claim 4, wherein said loading holder further has a guiding slot provided at a rear side of said feeding channel, wherein said striper clip is guided to slide along said guiding slot for ensuring said ammos retained in said feeding channel in position. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>6. A magazine loader, as recited in claim 4, wherein said loading holder further has a guiding slot provided at a rear side of said feeding channel, wherein said striper clip is guided to slide along said guiding slot for ensuring said ammos retained in said feeding channel in position. |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 7. A magazine loader, as recited in claim 5, wherein said loading holder further comprises a clip stopper formed within said guiding slot at said discharging opening end of said loading holder in such a manner that when said striper clip is slid into said guiding slot, the striper clip is stopped at said clip stopper for securely holding said ammos within said feeding channel in position. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>7. A magazine loader, as recited in claim 5, wherein said loading holder further comprises a clip stopper formed within said guiding slot at said discharging opening end of said loading holder in such a manner that when said striper clip is slid into said guiding slot, the striper clip is stopped at said clip stopper for securely holding said ammos within said feeding channel in position. |

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|----------|----------------------|------|----------------|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 8. A magazine loader, as recited in claim 6, wherein said loading holder further comprises a clip stopper formed within said guiding slot at said discharging opening end of said loading holder in such a manner that when said striper clip is slid into said guiding slot, the striper clip is stopped at said clip stopper for securely holding said ammos within said feeding channel in position. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>8. A magazine loader, as recited in claim 6, wherein said loading holder further comprises a clip stopper formed within said guiding slot at said discharging opening end of said loading holder in such a manner that when said striper clip is slid into said guiding slot, the striper clip is stopped at said clip stopper for securely holding said ammos within said feeding channel in position. |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 9. A magazine loader, as recited in claim 1, wherein said ammo pusher further comprises a pusher platform and an elongated pusher body downwardly extended therefrom while said pusher head is formed at a bottom end of said pusher body, wherein said pusher body has a predetermined length that when said pusher platform is stopped at said supplying opening end of said loading holder when said pusher head is positioned at said discharging opening end of said loading holder for ensuring said ammos within feeding channel being fed in said magazine. | *The elements of this claim, and the claim from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>9. A magazine loader, as recited in claim 1, wherein said ammo pusher further comprises a pusher platform and an elongated pusher body downwardly extended therefrom while said pusher head is formed at a bottom end of said pusher body, wherein said pusher body has a predetermined length that when said pusher platform is stopped at said supplying opening end of said loading holder when said pusher head is positioned at said discharging opening end of said loading holder for ensuring said ammos within feeding channel being fed in said magazine. |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 10. A magazine loader, as recited in claim 2, wherein said ammo pusher further comprises a pusher platform and an elongated pusher body downwardly extended therefrom while said pusher head is formed at a bottom end of said pusher body, wherein said pusher body has a predetermined length that when said pusher platform is stopped at said supplying opening end of said loading holder when said pusher head is positioned at said discharging opening end of said loading holder for ensuring said ammos within feeding channel being fed in said magazine. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>10. A magazine loader, as recited in claim 2, wherein said ammo pusher further comprises a pusher platform and an elongated pusher body downwardly extended therefrom while said pusher head is formed at a bottom end of said pusher body, wherein said pusher body has a predetermined length that when said pusher platform is stopped at said supplying opening end of said loading holder when said pusher head is positioned at said discharging opening end of said loading holder for ensuring said ammos within feeding channel being fed in said magazine. |

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|----------|----------------------|------|----------------|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 11. A magazine loader, as recited in claim 4, wherein said ammo pusher further comprises a pusher platform and an elongated pusher body downwardly extended therefrom while said pusher head is formed at a bottom end of said pusher body, wherein said pusher body has a predetermined length that when said pusher platform is stopped at said supplying opening end of said loading holder when said pusher head is positioned at said discharging opening end of said loading holder for ensuring said ammos within feeding channel being fed in said magazine. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>11. A magazine loader, as recited in claim 4, wherein said ammo pusher further comprises a pusher platform and an elongated pusher body downwardly extended therefrom while said pusher head is formed at a bottom end of said pusher body, wherein said pusher body has a predetermined length that when said pusher platform is stopped at said supplying opening end of said loading holder when said pusher head is positioned at said discharging opening end of said loading holder for ensuring said ammos within feeding channel being fed in said magazine. |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 12. A magazine loader, as recited in claim 8, wherein said ammo pusher further comprises a pusher platform and an elongated pusher body downwardly extended therefrom while said pusher head is formed at a bottom end of said pusher body, wherein said pusher body has a predetermined length that when said pusher platform is stopped at said supplying opening end of said loading holder when said pusher head is positioned at said discharging opening end of said loading holder for ensuring said ammos within feeding channel being fed in said magazine. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>12. A magazine loader, as recited in claim 8, wherein said ammo pusher further comprises a pusher platform and an elongated pusher body downwardly extended therefrom while said pusher head is formed at a bottom end of said pusher body, wherein said pusher body has a predetermined length that when said pusher platform is stopped at said supplying opening end of said loading holder when said pusher head is positioned at said discharging opening end of said loading holder for ensuring said ammos within feeding channel being fed in said magazine. |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 13. A magazine loader, as recited in claim 9, wherein said ammo pusher further comprises a clip retraction element provided at said pusher platform to detachably engage with said striper clip when said pusher head is slidably moved at said discharging opening end of said loading holder, so that when said ammo pusher is slidably pulled out from said feeding channel, said striper clip is automatically pulled out from said loading holder at the same time. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>13. A magazine loader, as recited in claim 9, wherein said ammo pusher further comprises a clip retraction element provided at said pusher platform to detachably engage with said striper clip when said pusher head is slidably moved at said discharging opening end of said loading holder, so that when said ammo pusher is slidably pulled out from said feeding channel, said striper clip is automatically pulled out from said loading holder at the same time. |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 14. A magazine loader, as recited in claim 10, wherein said ammo pusher further comprises a clip retraction element provided at said pusher platform to detachably engage with said striper clip when said pusher head is slidably moved at said discharging opening end of said loading holder, so that when said ammo pusher is slidably pulled out from said feeding channel, said striper clip is automatically pulled out from said loading holder at the same time. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>14. A magazine loader, as recited in claim 10, wherein said ammo pusher further comprises a clip retraction element provided at said pusher platform to detachably engage with said striper clip when said pusher head is slidably moved at said discharging opening end of said loading holder, so that when said ammo pusher is slidably pulled out from said feeding channel, said striper clip is automatically pulled out from said loading holder at the same time. |

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 15. A magazine loader, as recited in claim 11, wherein said ammo pusher further comprises a clip retraction element provided at said pusher platform to detachably engage with said striper clip when said pusher head is slidably moved at said discharging opening end of said loading holder, so that when said ammo pusher is slidably pulled out from said feeding channel, said striper clip is automatically pulled out from said loading holder at the same time. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>15. A magazine loader, as recited in claim 11, wherein said ammo pusher further comprises a clip retraction element provided at said pusher platform to detachably engage with said striper clip when said pusher head is slidably moved at said discharging opening end of said loading holder, so that when said ammo pusher is slidably pulled out from said feeding channel, said striper clip is automatically pulled out from said loading holder at the same time. |

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 16. A magazine loader, as recited in claim 12, wherein said ammo pusher further comprises a clip retraction element provided at said pusher platform to detachably engage with said striper clip when said pusher head is slidably moved at said discharging opening end of said loading holder, so that when said ammo pusher is slidably pulled out from said feeding channel, said striper clip is automatically pulled out from said loading holder at the same time. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>16. A magazine loader, as recited in claim 12, wherein said ammo pusher further comprises a clip retraction element provided at said pusher platform to detachably engage with said striper clip when said pusher head is slidably moved at said discharging opening end of said loading holder, so that when said ammo pusher is slidably pulled out from said feeding channel, said striper clip is automatically pulled out from said loading holder at the same time. |

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 17. A magazine loader, as recited in claim 13, wherein said clip retraction element is a magnet mounted at a bottom side of said pusher platform and said striper clip is made of magnetic attraction ability material, in such a manner that when said ammo pusher is slidably pushed in said feeding channel until said pusher head is positioned at said discharging opening end of said loading holder, said clip retraction element is magnetically engaged with said striper clip. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>17. A magazine loader, as recited in claim 13, wherein said clip retraction element is a magnet mounted at a bottom side of said pusher platform and said striper clip is made of magnetic attraction ability material, in such a manner that when said ammo pusher is slidably pushed in said feeding channel until said pusher head is positioned at said discharging opening end of said loading holder, said clip retraction element is magnetically engaged with said striper clip. |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 18. A magazine loader, as recited in claim 14, wherein said clip retraction element is a magnet mounted at a bottom side of said pusher platform and said striper clip is made of magnetic attraction ability material, in such a manner that when said ammo pusher is slidably pushed in said feeding channel until said pusher head is positioned at said discharging opening end of said loading holder, said clip retraction element is magnetically engaged with said striper clip. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:* <br><br> 18. A magazine loader, as recited in claim 14, wherein said clip retraction element is a magnet mounted at a bottom side of said pusher platform and said striper clip is made of magnetic attraction ability material, in such a manner that when said ammo pusher is slidably pushed in said feeding channel until said pusher head is positioned at said discharging opening end of said loading holder, said clip retraction element is magnetically engaged with said striper clip. |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 19. A magazine loader, as recited in claim 15, wherein said clip retraction element is a magnet mounted at a bottom side of said pusher platform and said striper clip is made of magnetic attraction ability material, in such a manner that when said ammo pusher is slidably pushed in said feeding channel until said pusher head is positioned at said discharging opening end of said loading holder, said clip retraction element is magnetically engaged with said striper clip. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>19. A magazine loader, as recited in claim 15, wherein said clip retraction element is a magnet mounted at a bottom side of said pusher platform and said striper clip is made of magnetic attraction ability material, in such a manner that when said ammo pusher is slidably pushed in said feeding channel until said pusher head is positioned at said discharging opening end of said loading holder, said clip retraction element is magnetically engaged with said striper clip. |

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|----------|------------------------|------|----------------|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 20. A magazine loader, as recited in claim 16, wherein said clip retraction element is a magnet mounted at a bottom side of said pusher platform and said striper clip is made of magnetic attraction ability material, in such a manner that when said ammo pusher is slidably pushed in said feeding channel until said pusher head is positioned at said discharging opening end of said loading holder, said clip retraction element is magnetically engaged with said striper clip. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>20. A magazine loader, as recited in claim 16, wherein said clip retraction element is a magnet mounted at a bottom side of said pusher platform and said striper clip is made of magnetic attraction ability material, in such a manner that when said ammo pusher is slidably pushed in said feeding channel until said pusher head is positioned at said discharging opening end of said loading holder, said clip retraction element is magnetically engaged with said striper clip. |

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 21. A magazine loader, as recited in claim 2, wherein said pusher head of said ammo pusher has an enlarged bottom engaging surface for enlarging a contacting surface of said pusher with respective to said respective ammo within said feeding channel so as to evenly distribute a pushing force from said pusher head on said ammos. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>21. A magazine loader, as recited in claim 2, wherein said pusher head of said ammo pusher has an enlarged bottom engaging surface for enlarging a contacting surface of said pusher with respective to said respective ammo within said feeding channel so as to evenly distribute a pushing force from said pusher head on said ammos. |
| 22. A magazine loader, as recited in claim 6, wherein said pusher head of said ammo pusher has an enlarged bottom engaging surface for enlarging a contacting surface of said pusher with respective to said respective ammo within said feeding channel so as to evenly distribute a pushing force from said pusher head on said ammos. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:*<br><br>22. A magazine loader, as recited in claim 6, wherein said pusher head of said ammo pusher has an enlarged bottom engaging surface for enlarging a contacting surface of said pusher with respective to said respective ammo within said feeding channel so as to evenly distribute a pushing force from said pusher head on said ammos. |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

| | |
|---|---|
| 23. A magazine loader, as recited in claim 8, wherein said pusher head of said ammo pusher has an enlarged bottom engaging surface for enlarging a contacting surface of said pusher with respective to said respective ammo within said feeding channel so as to evenly distribute a pushing force from said pusher head on said ammos. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:* <br><br> 23. A magazine loader, as recited in claim 8, wherein said pusher head of said ammo pusher has an enlarged bottom engaging surface for enlarging a contacting surface of said pusher with respective to said respective ammo within said feeding channel so as to evenly distribute a pushing force from said pusher head on said ammos. |
| 24. A magazine loader, as recited in claim 12, wherein said pusher head of said ammo pusher has an enlarged bottom engaging surface for enlarging a contacting surface of said pusher with respective to said respective ammo within said feeding channel so as to evenly distribute a pushing force from said pusher head on said ammos. | *The elements of this claim, and the claims from which it depends, have the plain and ordinary meaning in light of the entire specification of the '987 Patent (especially column 2, line 66 through column 6, line 3; and Figures 2-4) and all other claims of the '987 Patent, and consistent with dictionary definitions of the claim words. The claim thus means:* <br><br> 24. A magazine loader, as recited in claim 12, wherein said pusher head of said ammo pusher has an enlarged bottom engaging surface for enlarging a contacting surface of said pusher with respective to said respective ammo within said feeding channel so as to evenly distribute a pushing force from said pusher head on said ammos. |

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

B.      The Design Patents

In the Complaint, Plaintiffs allege that Defendants infringed on six design patents.  The Court construes them as follows, after explaining the scope of each patent.

1.      The D555,455 Patent

Design Patent Number D555,455 (the "'455 Patent") is directed at a multifunction tool as illustrated in Image 1:



Plaintiffs assert that the '455 Patent covers the following ornamental aspects of the tool:

A.      Look, feel, and overall impression of the design;
B.      Overall shape, profiles, and dimensions of the design'
C.      Dimensions, layout, placement, and combination of various components of the design;
D.      Dimensions, layout, placement, and combination of various components of the design;
E.      Selection, combination, and placement of tools within the entire design shown in figures 8-15 [of the Patent]; and

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

F.      Shape and dimensions of tool enclosure shown in all figures.

*Pl's Identification of Claims*, Dkt. #89, Ex. 1 at 5-6.  Defendants argue that because the multifunction tool contains individual tools "designed for specific functions and utilities," the design of the multifunction tool itself is functional and not protected by the design patent.  *See Def.'s Claim Construction Opening Brief* at 11:10-15.  To support its position, Defendants rely almost exclusively on Plaintiff New Century's multifunction tool product manual, which explains the functionality of each of the included tools.  *See id.* at 6:24-11:15; *see also Def.'s Reply* at 8:25-12:10.

Defendants' position, however, ignores the fact that a design patent can cover a device with a function.  *See Stanley Works, Inc.*, 1046 F. Supp. 2d at 1050-51 (holding that certain design elements of a multifunction tool were protected by a design patent).  Design patent protection is lost only if the design of the object is "dictated by" its function.  *L.A. Gear*, 988 F.3d at 1123.  In this case, the design of the multifunction tool is not dictated by the functions performed by the individual parts.  Before construing the Patent, however, the Court addresses Defendants arguments.

First, Defendants argue that each of the tools within the multifunction tool have separate functions.  *See Def.'s Claim Construction Opening Brief* at 6:21-14:17.  Plaintiffs concede as much.  *See, e.g., Pl's Response*, 5:21-22 ("The Defendants argue that these tools are designed to mate with a component on a rifle . . . This is true.").  For example, Defendants explain that the front sight post wrenches are designed to adjust a front sight post, that the rear sight tool is designed to adjust the rear sight adjuster, that the receiver pin punch assists in "field stripping [a] rifle," that the carbon scraper scrapes carbon, that the cleaning brush cleans, that the bolt assembly pin punch removes various pins on a rifle, that the broken shell extractor extracts broken shells, that the collapsible stock wrench helps to "remove and install . . . collapsible stocks", that the flat-head screwdriver drives screws, and that the housing of the multifunction tool houses the tools and is not ornamental.  *Def.'s Claim Construction Opening Brief* at 6:24-11:15.

Plaintiffs, on the other hand, offer evidence that each of the individual tools within the multifunction tool could have been designed differently with no adverse affect on the utility of the whole and its component parts.  First, Plaintiffs point to Defendants' own examples of tools capable of performing the same tasks as the tools in the multifunction tool, but which have different designs.  *See Chin Decl.* ¶ 11 (identifying an alternative design for a sight post wrench); *Chin Decl.* ¶ 13 (alternatively designed sight tool); Chin Decl. ¶ 17 (Defense expert

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
| --- | --- | --- | --- |
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

testifying that instead of a using a bolt punch assembly, a person could use "[a]nything of proper size . . . for example, the tip of a bullet"); Chin Decl. ¶ 18 (alternatively designed broken shell extractor); Chin Decl. ¶ 19 (alternatively designed wrench).  Plaintiffs' expert then confirms that each of the tools could have been designed differently while maintaining the same degree of functionality.  *See Nixon Decl.* ¶¶ 14-21.  Moreover, Plaintiffs identify a commercially available multifunction tool that contains many of the same individual tools, but looks "very different." *See Pl's Response* at 13:15-14:6 ("The patented tool looks like a mobile flip phone when closed and opens like a clam shell, while the other tool looks like a pocket knife"); *see also Nixon Decl.* ¶ 11.  This particular evidence shows that the design of the housing of Plaintiffs' multifunction tool is not dictated by function and can be altered while maintaining utility.  Thus, the designs of the tools within the multifunction tool and the design of the multifunction tool itself are not "dictated by the use or purpose of the article" and can be altered without adversely affecting the article's utility  *See Rosco*, 304 F.3d at 1378.

Nevertheless, the Court finds that the design feature of having to remove the various individual tools from the housing of the multifunction tool in order to make use of each individual tool is "dictated by the use or purpose of the article" and is not covered by the '455 design patent.  The functional aspect of such a design is made even more clear when compared with the alternative, commercially available multifunction tool that resembles a pocketknife, which Plaintiffs identify.  *See Pl's Response* at 13:15-14:6 (a multifunction tool that apparently operates by removing each individual tool from the housing before use of that particular tool).

With the above in mind, the Court construes the '455 Patent as a multifunction tool as shown in figures 1-15 of the '455 Patent, but limits the '455 Patent to exclude the design feature of having to remove the individual tools from the housing of the multifunction tool.

     2.    The D598,723 Patent

Design Patent Number D598,723 is a multifunction wrench as shown in Image 2:



O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

Defendants again claim that because the tool is functional, it cannot be protected by a design patent as ornamental. *See Def.'s Reply* 13:26. While the multifunction wrench's mere status as a functional tool does not render it unprotected, the Court nevertheless concludes that the design of the multifunction wrench is likely dictated by its function.

Defendants argue that Plaintiffs' article covered by the '723 Patent is an exact copy of prior art, Patent Number D548,552, but with the addition of a "castle nut wrench." *See Def.'s Reply* 12:12-13:26; *First Stahl Decl.*, Ex. K (the '552 Patent). The Court agrees that the close resemblance of the patented article in this case to the prior art suggests that design is indeed dictated by function. *See L.A. Gear, Inc.*, 988 F.2d at 1123. Moreover, while Plaintiffs argue that the various components of the multifunction wrench could be moved to other locations, *see Pl.'s Response* at 15:10-16:16; *Nixon Decl.* ¶¶ 22-24, there is no indication that moving the components of the wrench would not affect the tools utility, *see L.A. Gear, Inc.*, 988 F.2d at 1123; *see also PHG Technologies, LLC v. St. John Companies, Inc.*, 469 F.3d 1361, 1367 (Fed. Cir. 2006). In fact, Plaintiffs' expert confirmed that by moving the various wrenches to different locations on the tool would likely affect a user's ability to generate torque, thus affecting the tool's usefulness. *Nixon Depo.* 127:19-128:9, *Second Stahl Decl.*, Ex. E, p. 67-68 ("I mean, it's true that the longer that is the less force the user would have to apply to – to generate a given torque."). Plaintiffs argument that the layout of the multifunction wrench can be adjusted, and thus the tool is protected by a design patent, is contrary to both the substantially similar prior art and Plaintiffs' experts' own testimony. As a result, the Court is left to conclude that the design of the article depicted in the '455 Patent is largely functional, not ornamental.

### 3.   Weaver Rails and Picatinny Rails

Design Patent Number D542,880 (the "'880 Patent") and the remaining design patents to be construed depict articles known as "Weaver rails," which are similar to "Picatinny rails." Such rails "are mounting platforms used on firearms to connect accessories such as scopes, tactical lights, and other accessories to the firearm." *Nixon Decl.* ¶ 25; *see also Chin Decl.* ¶ 37. Defendants' arguments as to why the various rails are functional and not ornamental apply to all the remaining patents, and the Court considers them together before construing the Patents separately.

Once again, Defendants insist that because '880, '750, '751, and '605 Patents all depict articles that enable a user to attach accessories to a firearm, the designs are functional and thus outside the scope of a design patent. *See Def.'s Claim Construction Opening Brief* at 18:11-12 ("the Patent[s are] directed at a mount that w[ere] designed based on functional criteria," not

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

ornamental criteria).  The Court agrees that the articles are functional, but disagrees that function dictated the designs of the articles.

Defendants' expert stated that because "[c]ompatibility of accessories with rifles is of particular concern for law enforcement and military . . . a government standard called MIL-STD-1913 was set" for Picatinny rails to ensure maximum compatibility.  *Chin Decl.* ¶ 40.  This standard requires that the grooves that enable accessory mounting be set with certain spacing and have a certain width.  *See id.* ¶ 41.  Other than those requirements, however, Defendants do not argue nor suggest that there are any other design elements of a Weaver or Picatinny rail that are dictated by their purpose.

Plaintiffs do not dispute the applicable spacing and width standards, but do insist that virtually all of the other design aspects of the articles covered by the remaining design patents are purely ornamental.  For example, Plaintiffs provide examples of other rails that use a rib design—where the mounting elements extend across the entire width of the rail—whereas the patented articles use teeth, or two distinct rows of mounting elements with a space in the middle.  *See, e.g., Nixon Decl.* ¶¶ 31-35.  Plaintiffs note that the rail patents in this case concern only Weaver rails, and provide evidence indicating that Weaver rails are distinct from Picatinny rails.  *See id.* ¶¶ 27, 30 ("None of the rails depicted in the diagrams in the patents in this suit could be mistaken for Picatinny rails because they all have teeth instead of ribs, and no dimensions are specified.  Additionally, the patents are entitled 'Weaver rail.'").  Plaintiffs identify that the only requirement for a Weaver rail is that it have a "recoil grove to be .180 inches wide."  *Id.* ¶ 27, ¶ 34 (indicating that both Picatinny rails and Weaver rails have rails, but the rails here have teeth and the spacing of the teeth, the "shape of the teeth and the height of the teeth . . . [are] not required" to be uniform).  Based on this, the Court concludes that the design of each rail's "recoil grove" is dictated by necessity and cannot be covered by the design patents.  The remaining design elements, however, are protected by the rail patents, as described below.

       i.     The D542,880 Patent

Plaintiffs assert that the '880 Patent covers the following ornamental aspects of the Weaver rail, as shown in Image 3 below:

    A.     Look, feel, and overall impression of the design;
    B.     Overall shape, profiles, and dimensions of the design;
    C.     Dimensions, layout, placement, and combination of various components of the design;

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

|   |   |
|---|---|
| D. | Number, size, and types of screws and holes shown in figures 1-3, 6, and 7; |
| E. | Number, shape, and arrangement of teeth along top of rail design shown in figures 1-3 and 6; |
| F. | Shape and configuration of closed center channel shown in figures 1, 4, and 5; |
| G. | Shape and slope of side walls shown in figures 1, 4, and 5; |
| H. | Grooves adapted for attachment plates shown in all figures; |
| I. | Number and shape of attachment plates shown in all figures; |
| J. | Number and shape of rectangular ridges perpendicular to length of the design shown in figure 7; |
| K. | Number and shape of rectangular ridges parallel to length of the design shown in figure 7; |
| L. | Shape and configuration of open side channel shown in figures 1, 4, and 5; and |
| M. | Shape and configuration of attachment adapted for open side channel shown in figures 1, 4, and 5. |

*Pl's Identification of Claims*, Dkt. #89, Ex. 1 at 2-3.
Image 3:



Consistent with the above discussion, the Court construes the D542,880 Patent as follows: a Weaver Rail as depicted in figures 1-7 of the '880 Patent.

ii.     The D555,750 Patent

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

Plaintiffs assert that the '750 Patent covers the following ornamental aspects of the Weaver rail, as shown in Image 4, below:

A.   Look, feel, and overall impression of the design;

B.   Overall shape, profiles, and dimensions of the design;

C.   Dimensions, layout, placement, and combination of various components of the design;

D.   Number, size, and types of screws and holes shown in figures 1-3, 6, and 7;

E.   Number, shape, and arrangement of teeth along top of rail design shown in figures 1-3 and 6;

F.   Shape and configuration of closed center channel shown in figures 1, 4, and 5;

G.   Shape and slope of side walls shown in figures 1, 4, and 5;

H.   Grooves adapted for attachment plates shown in all figures;

I.   Number and shape of attachment plates shown in all figures;

J.   Number and shape of rectangular ridges parallel to length of the design shown in figure 7;

K.   Shape and configuration of open side channel shown in figures 1, 4, and 5; and

L.   Placement and shape of bolt and screw shown in figures 2-5 and 7.

*Pl's Identification of Claims*, Dkt. #89, Ex. 1 at 4**.**

Image 4:



O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

Consistent with the above discussion, the Court construes the D555,750 Patent as follows: a Weaver Rail with two distinct rows of teeth and a concave, solid connecting surface, as depicted in figures 1-7 of the '750 Patent.

        iii.    The D555,751 Patent

Plaintiffs assert that the '751 Patent covers the following ornamental aspects of the Weaver rail, as shown in Image 5, below:

A.    Look, feel, and overall impression of the design;

B.    Overall shape, profiles, and dimensions of the design;

C.    Dimensions, layout, placement, and combination of various components of the design;

D.    Number, size, and types of screws and holes shown in all figures;

E.    Number, shape, and arrangement of teeth along top of rail design shown in figures 1-6;

F.    Shape and configuration of open center channel shown in figures 1, and 4-6;

G.    Grooves adapted for attachment plates shown in figures 1-6;

H.    Number and shape of attachment plates shown in figures 1, 2, and 4-7; and

I.    Shape and dimensions of rectangular protrusion preceding rail shown in figures 1-3 and 6.

*Pl's Corrected Identification of Claims*, Dkt. #95, Ex. 1 at 5**.**

Image 5:

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |



Nevertheless, consistent with the above discussion, the Court construes the D555,751 Patent as follows: a Weaver Rail as depicted in figures 1-7 of the '751 Patent.

### iv.    The D543,605 Patent

Plaintiffs assert that the '605 Patent covers the following ornamental aspects of the Weaver rail, as shown in Image 6, below:

A.    Look, feel, and overall impression of the design;
B.    Overall shape, profiles, and dimensions of the design;
C.    Dimensions, layout, placement, and combination of various components of the design;
D.    Number, size, and types of screws and holes shown in all figures;
E.    Number, shape, and arrangement of teeth along top of rail design shown in figures 1-6;
F.    Shape and configuration of closed center channel shown in figures 1, 4, and 5;
G.    Shape and slope of side walls shown in figures 1, 4, and 5;
H.    Grooves adapted for attachment plates shown in figures 1-6; and
I.    Number and shape of attachment plates shown in all figures;

*Pl's Identification of Claims*, Dkt. #89, Ex. 1 at 2-3**.**

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-3814 PSG (PLAx) | Date | April 14, 2011 |
|---|---|---|---|
| Title | Carson Cheng, *et al.* v. AIM Sports, Inc., *et al.* | | |

Image 6:



Consistent with the above discussion, the Court construes the D543,605 Patent as follows: a Weaver Rail consisting of two distinct rows of teeth with a flat, rather than concave or convex connecting surface between the top and side walls, as depicted in figures 1-7 of the '605 Patent.

IV.   <u>Conclusion</u>

The Court construes the Patents at issue as indicated above.

**IT IS SO ORDERED.**