Rodney W. Bell (SBN 125314); rbell@changcote.com
Audrey L. Khoo (SBN 254007); akhoo@changcote.com
CHANG & COTE, LLP
19138 E. Walnut Drive North, Suite 100
Rowland Heights, CA 91748
Telephone: (626) 854-2112; Facsimile: (626) 854-2120

Paul A. Stewart (SBN 153467); paul.stewart@kmob.com
Michael K. Friedland (SBN 157217); mfriedland@kmob.com
Boris Zelkind (SBN 214014); boris.zelkind@kmob.com
Ian Jaquette (SBN 253887); Ian.Jaquette@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404; Facsimile: (949) 760-9502

Attorneys for Plaintiffs, CARSON CHENG and NEW CENTURY
SCI & TECH, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CARSON CHENG, an individual; NEW CENTURY SCI & TECH, INC., a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> AIM SPORTS, INC., a California corporation; GUOPING CUI, an individual also known as George Cui; YING CUI, an individual also known as Amber Cui; JUAN COVARRUBBIAS, an individual; QINGDAO AMBER SPORTS CO., LTD., a Chinese registered company; SHANDONG INTERNATIONAL ECONOMIC & TECHNICAL DEVELOPMENT CO., LTD., a Chinese registered company; COMBAT OPTICAL, INC., a California corporation; MICRO WORLD CORP., a California corporation doing business as BARSKA, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS. | Civil Action No. <br> CV 10-03814 PSG (PLAx) <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF PREEMPTION AND LACK OF EVIDENCE** <br><br> Date:     October 31, 2011 <br> Time:     1:30 p.m. <br> Place:    Courtroom 880 <br> (Roybal Building – Los Angeles) <br><br><br> Honorable Judge Gutierrez |

## TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ..................................................................1

II.   STATEMENT OF FACTS ....................................................2

III.  THE SUMMARY JUDGMENT STANDARD .......................4

IV.  PLAINTIFFS' UNFAIR COMPETITION CLAIM IS NOT PREEMPTED ......................................................................4

V.   SHANDONG AND G. CUI ARE LIABLE FOR THEIR BREACH OF FIDUCIARY DUTY .......................................6

      A.    California Law Does Not Support SIET's Position That A Minority Shareholder In A Closely-Held Company Owes No Duties To The Company ...........................6

      B.    There Is Substantial Evidence That SIET Breached Its Fiduciary Duty To New Century....................................9

      C.    A Triable Issue Exists As To Whether G. Cui Breached His Fiduciary Duty To New Century...........................14

            1.    A Triable Issue Exists As To Whether G. Cui's Relationship To New Century Ended In 2006 ...................14

            2.    There Is A Triable Issue As To Whether G. Cui Committed Acts Of Wrongdoing Against New Century ...............................................................15

            3.    G. Cui's Assertion That Plaintiffs "Should Have Raised Concerns" In The 2007 Patent Case is Unsupportable And Frivolous ................................17

VI.  Y. AND G. CUI ARE PERSONALLY LIABLE FOR PATENT INFRINGEMENT .................................................18

      A.    Y. and G. Cui Knowingly Induced Infringement..........................18

      B.    Y. and G. Cui Had The Specific Intent To Induce Infringement Of The Patents-in-Suit ............................19

VII.  CONCLUSION ...................................................................21

# TABLE OF AUTHORITIES

Page No.

*A.W. Chesterton Co. v. Chesterton,*
     128 F.3d 1 (1st Cir. 1997) ...................................................... 9

*Anderson v. Liberty Lobby, Inc.,*
     477 U.S. 242, 106 S. Ct. 2505 (1986) ............................... 4, 15

*Berg & Berg Enterprises, LLC v. Boyle*
     178 Cal.App.4th 1020 (2009)................................................. 14

*Celotex Corp. v. Catrett,*
     477 U.S. 317, 106 S. Ct. 2548 (1986) ............................... 4, 11

*Donahue v. Rodd Electrotype Co.,*
     367 Mass. 578, 328 N.E.2d 505 (1975)................................... 9

*DSU Med. Corp. v. JMS Co.,*
     471 F.3d 1293 (Fed. Cir. 2006).................................18, 19, 20

*Gart v. Logitech, Inc.,*
     254 F.3d 1334 (Fed. Cir. 2001) ............................................... 4

*Global-Tech Appliances, Inc. v. SEB S.A.,*
     131 S.Ct. 2060, 179 L. Ed. 2d 1167 (2011)......................... 18

*Hopkins v. Andaya,*
     958 F.2d 881 (9th Cir. 1992).................................................. 15

*Hunt v. Cromartie,*
     526 U.S. 541, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) ....................... 13

*Jones v. H. F. Ahmanson & Co.,*
     1 Cal.3d 93 (1969) .................................................................. 6

*Manville Sales Corp. v. Paramount Sys., Inc.,*
     917 F.2d 544 (Fed. Cir. 1990)........................................18, 20

*Medical Air Tech. Corp. v. Marwan Inv., Inc.*
     303 F.3d 11 (1st Cir. 2002) ..................................................... 8

TABLE OF AUTHORITIES
(continued)

Page No.

*Merner v. Merner,*
    129 Fed.Appx. 342 (9th Cir. 2005) ....................................................... 7

*Miles, Inc. v. Scripps Clinic & Research Found.,*
    810 F.Supp. 1091 (S.D.Cal. 1993) ....................................................... 8

*Persson v. Smart Inventions, Inc.,*
    125 Cal.App.4th 1141 (2005) ................................................................ 8

*Rexford Rand Corp. v. Ancel,*
    58 F.3d 1215 (7th Cir. 1995) ............................................................. 8, 9

*Rodime PLC v. Seagate Tech., Inc.,*
    174 F.3d 1294 (Fed. Cir. 1999) ............................................................ 4

*Singhania v. Uttarwar,*
    136 Cal.App.4th 416 (2006) ................................................................. 6

*Small v. Fritz Companies, Inc.,*
    30 Cal.4th 167 (2003) ......................................................................... 6

*Stephenson v. Drever,*
    16 Cal.4th 1167 (1997) ....................................................................... 6

*Wang v. Chinese Daily News, Inc.,*
    623 F.3d 743 (9th Cir. 2010) ............................................................... 5

OTHER AUTHORITIES

35 U.S.C. § 271 ..................................................................................... 18

Corp. Code, § 309 ................................................................................. 14

Fed. R. Civ. P. 56 ............................................................................ 4, 11

Fed. Rule of Appellate Procedure 32.1 ................................................. 7

Rule 36-3 ............................................................................................... 7

Plaintiffs Carson Cheng and New Century Sci & Tech, Inc. (collectively "Plaintiffs") submit this Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment of Preemption and Lack of Evidence.

## I. **INTRODUCTION**

Plaintiffs' unfair competition claim is not preempted. This claim includes an additional element not found in the federal patent law cause of action. Specifically, Plaintiffs' unfair competition claim requires proof that Defendants' business practice is unlawful, unfair, or fraudulent. This element is not required to establish patent infringement. As set forth in detail below, Plaintiffs have come forward with evidence establishing that Defendants' practices were unlawful, unfair, or fraudulent, and, in view of these additional allegations and the evidence supporting them, Plaintiffs' unfair competition claim is not preempted.

Defendants are not entitled to summary judgment on the Breach of Fiduciary Duty claims of Plaintiff New Century Sci & Tech, Inc. ("New Century"). The argument of Defendant Shandong International Economic & Technical Development Co., Ltd. ("SIET") that a minority shareholder owes no duty to avoid inuring the company is unsupported by California law. Guoping Cui's arguments are undermined by evidence that he served as a Director of New Century during the period that SIET, which he controlled, was supplying goods (including infringing goods) to AIM, a company in competition with New Century. Moreover, the evidence raises a powerful inference that G. Cui controlled AIM and its later supplier, Qingdao. directly, making the timing of the demise of SIET immaterial to G. Cui's liability.

Defendants' argument that Ying and G. Cui are not personally liable for patent infringement is incorrect. Y. and G. Cui knowingly induced infringement and possessed specific intent to encourage AIM's, Qingdao's, and their

employees' direct infringement by personally selling and importing the infringing products and directing the manufacture and sale of infringing products. Accordingly, under established precedent, Y. Cui and G. Cui are personally liable for their patent infringement.

For these reasons, Defendants have not met their burden on summary judgment, and this Court should deny their motion in its entirety.

## II.  **STATEMENT OF FACTS**

Since 1997, New Century has been a leading designer, developer, and wholesale distributor of firearm-related tools, accessories, and sporting optics. (Declaration of Carson Cheng, ¶ 2). Plaintiffs are the owners of six design patents, U.S. Patent Nos. D542,880 ("the D880 patent"), D555,751 ("the D751 patent"), D555,750 ("the D750 patent"), D598,723 ("the D723 patent") D543,605 ("the D605 patent"), D555,455 ("the D455 patent"), and one utility patent, U.S. Patent No. 6,754,987 ("the '987 patent") (collectively, the "patents-in-suit"). (*Id.*, ¶ 3). After years of bringing new and improved designs to the market, New Century has developed a reputation for selling unique and innovative goods. (*Id.*, ¶ 14).

Until December 2006, Defendant SIET was the sole Chinese supplier of products to New Century. The goods supplied by SIET to New Century included the products covered by the patents-in-suit.  (*Id.*, ¶ 4).

Defendant Guoping Cui ("G. Cui"), who is the majority shareholder of SIET, sat on New Century's board of directors and G. Cui's daughter, Ying Cui ("Y. Cui"), was an employee of New Century. They were both intimately involved in New Century's business, and both were fully aware of Plaintiffs' patent rights. (*Id.*, ¶¶ 5-9).

In November 2006, G. and Y. Cui secretly started a competing company. (*Id.*, ¶ 10). When G. and Y. Cui first formed the competing company to sell knockoff products, they actually adopted New Century's registered "NcStar"

-2-

trademark as their company's original legal name, *NcStar, Inc.* They later changed the name to "AIM Sports, Inc." (*Id.*, ¶ 11).

Once Plaintiffs learned of Y. and G. Cui's plot, Plaintiffs immediately removed them from their positions at New Century. (*Id.*, ¶ 12). Although New Century's relationship with Y. and G. Cui was terminated, they continued to manufacture replicas of the products that they used to supply to New Century through SIET. However, the products are now sold to AIM who, under Y. Cui's management, resells them to retailers and individuals in direct competition with Plaintiffs. (*Id.*, ¶ 13).

In 2007, Y. and G. Cui formed a company called Qingdao Amber Sports Co., Ltd. ("Qingdao"). Qingdao instantly assumed SIET's role as the supplier of infringing goods to AIM. (*Id.*, ¶ 25).

In her personal capacity at AIM, Y. Cui personally offers to sell and sells AIM's infringing products at trade shows and elsewhere. (*Id.*, ¶ 24). She also actively directs and supervises AIM's sales staff's direct infringement. (Declaration of Boris Zelkind, Ex. 1 at 122:14-19, Ex. 2 at 48:20-49:4 and 50:9-15, Ex. 3 at 22:2-18, 43:22-44:12, 47:25-48:1, 64:2-11 and 71:5-11). Y. Cui personally ordered and imported the infringing products from China. (Zelkind Decl., Ex. 1 at 89:21-90:2, Ex. 2 at 158:18-159:4). Further, as managing director of AIM, Y. Cui is in charge of AIM's day-to-day infringing sales activities and operations. (Zelkind Decl., Ex. 1 at 122:14-19, Ex. 2 at 24:16-19, and Ex. 3 at 47:25-48:1).

G. Cui is involved in running Qingdao's operation in his personal capacity. G. Cui is the individual responsible at Qingdao for directing the production and importation of infringing goods for resale by AIM. (Cheng Dec., ¶ 26).

/ / /

/ / /

### III.  THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only where the movant establishes that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2511 (1986). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513. Defendants bear the burden of showing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552-2553. Defendants have failed to carry this burden, and thus, this Court should deny Defendants' motion in its entirety.

### IV.  PLAINTIFFS' UNFAIR COMPETITION CLAIM IS NOT PREEMPTED

Federal patent law will not preempt state law claims if they "include additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." *Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1306 (Fed. Cir. 1999). As to unfair competition under Cal. Bus. & Prof. Code §17200, the plaintiff must prove that the defendant engaged in an unlawful, unfair, or fraudulent business act or practice. Patent infringement, in contrast, requires no such proof that the alleged infringer's business practice is unlawful, unfair, or fraudulent.

Defendants argue that Plaintiffs' unfair competition claim is based solely on alleged patent infringement. (*See* Def. Motion at 4). This is incorrect.  There

-4-

are numerous genuine issues of material fact regarding whether Defendants' business practices are also unlawful and/or unfair. For example, New Century has developed a reputation for selling unique and innovative goods. (Cheng Decl., ¶¶ 14-17). That reputation, however, has been damaged by Defendants. (Zelkind Decl., Ex. 5 at 4-5; Cheng Decl., ¶ 18). Defendants' unauthorized use of Plaintiffs' patented designs has damaged New Century's reputation for offering unique and innovative goods. (Zelkind Decl., Ex. 5 at 4-5; Cheng Decl., at ¶ 19).

Further, AIM has erroneously stated that for over 20 years, it has been producing high quality products and has established itself as a leader in the industry and that AIM started out as SIET. Both of these statements, however, are false. (Zelkind Decl., Ex. 6 at 4-5 and Ex. 7 at 1-2; Cheng Decl., ¶ 20). These statements have created confusion among New Century's customers as to whether AIM or New Century is producing the genuine product and which products are the knockoffs. As a result of these unfair business practices, Plaintiffs' business has also been harmed. (Cheng Decl., ¶ 21).

Plaintiffs have also heard from a number of customers that G. and Y. Cui have distributed a press release that AIM published in 2008 that contains numerous incorrect statements about Plaintiffs' patents and patented products that are damaging to New Century's reputation. (*Id.* at ¶ 22, Ex. 8).

Finally, SIET's breach of fiduciary duty is also a basis for Plaintiffs' unfair competition claims. *See Wang v. Chinese Daily News, Inc.,* 623 F.3d 743, 758-59 (9th Cir. 2010) (finding that an action based on section 17200 borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the statute). Because Plaintiffs' patent infringement claims requires no such proof that the alleged infringer's business practice is unlawful, unfair, or fraudulent, the unfair competition claim is not preempted.

## V.   SHANDONG AND G. CUI ARE LIABLE FOR THEIR BREACH OF FIDUCIARY DUTY

### A.   California Law Does Not Support SIET's Position That A Minority Shareholder In A Closely-Held Company Owes No Duties To The Company

Defendants assert that SIET cannot be liable for breach of a fiduciary duty toward New Century because it is alleged to be merely a minority shareholder.   "Only majority shareholders may have a fiduciary duty, not minority shareholders as alleged under Count IX." (Def. Motion at 5).   SIET's position is not supported by California law.

The topic of minority rights vis-à-vis controlling shareholders has received substantial attention from California courts.   *See*, *e.g., Jones v. H. F. Ahmanson & Co.,* 1 Cal.3d 93, 108 (1969) ("The Courts of Appeal have often recognized that majority shareholders, either singly or acting in concert to accomplish a joint purpose, have a fiduciary responsibility to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner."); *Singhania v. Uttarwar,* 136 Cal.App.4th 416, 426 (2006) ("California law clearly recognizes that officers and directors owe a fiduciary duty to stockholders and controlling stockholders owe a fiduciary duty to minority stockholders."); *Small v. Fritz Companies, Inc.,* 30 Cal.4th 167, 179 (2003) ("A controlling stockholder, such as defendant Lynn Fritz here, also owes fiduciary duties to minority stockholders."); *Stephenson v. Drever,* 16 Cal.4th 1167, 1178 (1997).

These cases address minority *rights*.  On the other hand, the nature and extent of a minority shareholder's *duties* remain largely unexplored.  Recently, the dearth of controlling authority led a Ninth Circuit panel to predict how a question of minority obligations toward the majority shareholder and the

/ / /

-6-

corporation would be decided by the state Supreme Court.[1]  While it reached a conclusion, the panel's decision was unpublished, giving it no precedential value.  Fed. Rule of Appellate Procedure 32.1; CTA9 Rule 36-3 ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").

In the instant action New Century alleges that its shareholder SIET caused injury to it through its operation and support of a competing business that, among other things, has infringed its patents:

"Defendant SIET breached its fiduciary duties to NCS&T by the commission of the following acts:

"a.     Actively participating in the formation and operation of AIM SPORTS in direct competition with NCS&T;

"b.     Willfully aiding, abetting and inducing AIM SPORTS' infringement of the '987 patent;

"c.     Willfully aiding, abetting and inducing AIM SPORTS' infringement of patents to which NCS&T holds exclusive licenses, including the '751 patent, the '880 patent, the '605 patent, the '750 patent, the '455 patent, and the '723 patent."

(Doc. 1, ¶ 90.)

Does a minority shareholder have a fiduciary duty toward the closely-held corporation in which it holds shares?  Although the Defendants flatly assert that "California does not recognize a fiduciary duty of a minority shareholder in a

/ / /

---

[1]   *See*, *Merner v. Merner,* 129 Fed.Appx. 342, 343 (9th Cir. 2005) ("In this diversity case, we must predict whether the California Supreme Court would conclude that Peter, a minority shareholder in a closely held corporation, owes a fiduciary duty to the majority shareholder, Carl, or the Company that prevents him from selling his shares to Catamount Operating and Funding Company, LLC (Catamount)").

close corporation," California law has not directly answered the question.[2] Other jurisdictions have answered it affirmatively.

"Minority shareholders have an obligation as de facto partners in the joint venture not to do damage to the corporate interests. If a minority shareholder harms the corporation through 'unscrupulous and improper "sharp dealings"' with the majority, he has breached his duty of loyalty. [Citations.] 'Conduct by any shareholder which is intended to be detrimental to the welfare of the enterprise ... is a breach of a duty of loyalty which all shareholders owe to the common venture.' [Citation.]" *Rexford Rand Corp. v. Ancel,* 58 F.3d 1215, 1219-20 (7th Cir. 1995) (decided under Illinois law); *see also Medical Air Tech. Corp. v. Marwan Inv., Inc.* 303 F.3d 11, 20 (1st Cir. 2002) (Closely-held corporation sued minority shareholder for opposing beneficial merger. "By contrast, this case involves actions by 15% minority shareholders. Massachusetts law is clear that minority shareholders in close corporations also have fiduciary responsibilities.")

The *Rexford Rand Corp.* case is particularly instructive. There, the corporation itself sued its minority shareholder for damage allegedly done to the corporation when the 25 percent minority owner took advantage of the lapse of

---

[2]   Plaintiffs have found no California case that addresses the topic of a minority shareholder's obligation toward a closely-held corporation and SIET has not cited one.   SIET's key authority, *Miles, Inc. v. Scripps Clinic & Research Found.*, 810 F.Supp. 1091 (S.D.Cal. 1993), a federal district court decision that purports to construe California law, addresses rights and duties among shareholders, but not between shareholders and the company itself:

"As to Defendant Scripps, it is not controverted that Defendant and Plaintiff were *both equal shareholders* in the newly formed corporation, Scripps-Miles, Inc. The general rule of limited liability of corporations is that shareholders *do not owe each other a fiduciary duty.*" *Miles, Inc., Id.* at 1099 (emphasis added).

Similarly, SIET's other cited case, *Persson v. Smart Inventions, Inc.*, 125 Cal.App.4th 1141 (2005), analyzes inter-shareholder duties only, pointing out that shareholders are not "*de facto* partners." *Id.*, at 1159. The court did not discuss duties between the shareholders and the company.

corporate registration to take the corporation's name for a new company. The corporation alleged that its inability to use its own name caused it to suffer losses. The company sought the return of its corporate name and damages on a theory of breach of fiduciary duty. Construing Illinois law, the court did not hesitate to find a fiduciary duty on part of the minority shareholder to avoid injury to the corporation. *Rexford Rand*, 58 F.3d at 1219.

Similarly, in a Massachusetts case, the First Circuit found no impediment to imposing a fiduciary duty in the fact that the defendant was merely a 27 percent owner of the corporation. The trial court's decision to enjoin the defendant's threatened sale of his shares was upheld on grounds that it would breach his duty to the controlling shareholder and to the company itself. "The *Donahue v. Rodd Electrotype Co.,* 367 Mass. 578, 328 N.E.2d 505 (1975) family of cases establishes that Chesterton owes the Company and its other shareholders a fiduciary duty of 'utmost good faith and loyalty.'" *A.W. Chesterton Co. v. Chesterton,* 128 F.3d 1, 6 (1st Cir. 1997).

As a shareholder of New Century, SIET owed the company a similar fiduciary duty to refrain from engaging in acts that would cause it harm. By establishing a competing enterprise and supplying it with goods that infringe patents of New Century, SIET breached this duty.

**B.** **There Is Substantial Evidence That SIET Breached Its Fiduciary Duty To New Century**

In their final point relating to SIET, the Defendants argue that they are entitled to summary judgment on New Century's claim for breach of fiduciary duty because "Plaintiffs have no evidence that [SIET] ever breached any purported fiduciary duty towards New Century." (Def. Motion at 6). As

/ / /

/ / /

/ / /

-9-

support for this argument, SIET merely refers to a question and answer in interrogatories[3]:

> "Interrogatory No. 4:
> "STATE THE COMPLETE FACTUAL BASIS of Count IX for Breach of Fiduciary Duty in the COMPLAINT against SHANDONG."
>
> "Response No. 4:
> "Plaintiff objects to this interrogatory in that it is premature in view of the fact that discovery is in the early stages and further investigation, discovery, and legal research and analysis may yield additional information. Subject to and without waiving the foregoing specific and General Objections, Plaintiff responds as follows: Per the court's ruling in *New Century Sci & Tech, Inc., et al. v. Carson Cheng, et al.* (LASC case no. BC374648), SIET was found to be a 32% shareholder in New Century. As a shareholder in a close corporation, SIET owed fiduciary duties to New Century. SIET breached these duties by his sale, offer to sell, use, manufacture, and importation of products that infringe Plaintiffs' patents. SIET supplies these infringing products to AIM Sports, Inc. ("AIM"), a competitor of New Century."

A party seeking summary judgment bears the burden of supplying evidence to support its factual arguments:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

--------

[3]   The evidence cited in support of SIET's assertion that "Plaintiffs have no evidence that [SIET] ever breached any purported fiduciary duty towards New Century" is found at Undisputed Fact 17. (Def. Motion at 6). That purported undisputed fact is supported solely by interrogatory no. 4 and its corresponding response in the first set of interrogatories from SIET to Carson Cheng, Exhibit D to the Stahl Declaration. For the convenience of the Court, that interrogatory and response have been recited verbatim here.

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

(Fed. R. Civ. P. 56(c).

The burden was not changed by the Supreme Court's decision in *Celotex*. "Instead, as we have explained, the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

SIET's citation of Carson Cheng's interrogatory response fails to meet that burden. Cheng's response does not establish that "there is an absence of evidence to support the nonmoving party's case." To the contrary, it describes a viable factual basis for New Century's claim that SIET breached its fiduciary duty to the company.

Contrary to the implication of SIET's argument, Cheng's interrogatory response hardly comprises the comprehensive factual basis of New Century's claim. In citing a single response, SIET has ignored the wealth of evidence that has been produced by the parties in this litigation. That evidence exposes SIET's complicity in a systematic scheme to abscond with the fruits of New Century's success. The evidence supports the following facts:

- SIET was New Century's sole supplier of Chinese-made firearms accessories until November 2006 (Zelkind Decl., Ex. 4 at 65:2-20; Cheng Decl., ¶ 4);

- G. Cui is the controlling shareholder of SIET (Declaration of Rod Bell, ¶ 9, Ex 17 at 2:21-26; Zelkind Decl., Ex. 4 at 60:15-19);

- Y. Cui is the daughter of G. Cui and the general manager of AIM (Bell Decl., ¶ 9, Ex. 17 at 288:18-24; Zelkind Decl., Ex. 1 at 9:24-10:6);

- AIM was formed to compete with New Century in February 2006. Its original corporate name was "NcStar Sports, Inc.," which constituted an unauthorized use of New Century's registered "NcStar" trademark. (Bell Decl., ¶ 9, Ex. 18 at 10:6-23; Cheng Decl., ¶ 11). Its original sole purported owner was Ada Lin, Y. Cui's mother-in-law. (Zelkind Decl., Ex. 2 at 26:18-20);

- AIM initially trumpeted itself as SIET operating under a new name in its early catalog. "Aim [Sports Inc.] started out as Shandong International Eco. & Tech. Development Co., Ltd. [*i.e.*, SIET] and was manufacturing products for some well known optic and gun part companies worldwide." (Zelkind Decl., Ex. 7);

- Between December 2006 and June 2007, AIM competed with New Century while purchasing its firearms accessories from SIET. (Bell Decl., ¶¶ 2-8 and 9, Exs. 10-16 and Ex. 18 at 9:9-20). These included designs that infringed the D750, D880, D751, D605 and '987 patents. (Bell Decl., ¶ 4, Ex. 12);

- Third-party discovery reveals that in May 2007, AIM sold goods that infringed the D455 patent. (Bell Decl., ¶¶ 4 and 8, Exs. 12 and 16; Zelkind Decl., Ex. 1 at 133:24-134:1, Ex. 21 at 206:12-209:1). Although AIM produced no documents that reflect its source for these goods, according AIM's own produced documents, SIET was AIM's only supplier at the time. (Bell Decl., ¶¶ 6-8, Exs. 12-16). This creates a reasonable inference that SIET also sold these infringing goods to AIM;

- In an obvious effort to conceal SIET's misconduct in supporting New Century's competitor, SIET stopped selling to AIM in 2006. (Bell Decl., ¶ 5). Its role as AIM's primary supplier was promptly taken up by Qingdao, (Cheng Decl., ¶ 25; Bell Decl., ¶ 7, Ex. 15),

a company controlled by G. Cui's sister-in-law, Hong Wang. (Zelkind Decl., Ex. 2 at 25:2-3, Ex. 20 at 25:9-26:12). Y. Cui testified that Hong Wang is also the sole owner of AIM, (*Id.,* Ex. 2 at 26:18-27:3), while Wang herself claimed that Qingdao is AIM's owner. (*Id.*, Ex. 20 at 48:8-21).

For purposes of SIET's motion, the significance of this evidence is clear. It raises a strong inference that SIET surreptitiously supported the formation of a company to compete with New Century while it was one of New Century's two shareholders.  Significant efforts were made to conceal the connections between the companies through the use of figurehead owners like Hong Wang and Ada Lin.

In ruling on the motion at bar, the Court must resolve all justifiable inferences in New Century's favor. *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) ("[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'").  The evidence that supports the facts described above raises a compelling inference that SIET and its controlling shareholder G. Cui deliberately set out to compete with New Century in violation of their fiduciary duties as its shareholder and director respectively.

Accordingly, the Court should not grant summary judgment on the fiduciary duty-based claims in favor of SIET.  The legal principle upon which SIET's argument rests, *i.e.,* that a minority owner owes the corporation no fiduciary duties, is unfounded in the law.  And the existence of compelling evidence of wrongdoing by SIET toward New Century means that the question of a breach of the duty must be decided by the trier of fact.

/ / /

/ / /

**C.    A Triable Issue Exists As To Whether G. Cui Breached His Fiduciary Duty To New Century.**

In California, it is hornbook law that officers and directors owe their corporation a fiduciary duty.

> "It is without dispute that in California, corporate directors owe a fiduciary duty to the corporation and its shareholders and now as set out by statute, must serve 'in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders.' (Corp. Code, § 309, subd. (a).)  This duty – generally to act with honesty, loyalty, and good faith – derived from the common law."

*Berg & Berg Enterprises, LLC v. Boyle* 178 Cal.App.4th 1020, 1037 (2009).

G. Cui attempts to evade the obligations of this duty by asserting that any misconduct on his part occurred after 2006 and is therefore not actionable. "Plaintiffs maintain that G. Cui stopped being an officer or director of New Century in 2006."  (Def. Motion at 7).

**1.    A Triable Issue Exists As To Whether G. Cui's Relationship To New Century Ended In 2006**

Preliminarily, Defendants' foundational assumption is incorrect.  It is not an undisputed fact that G. Cui ended his associations with New Century in 2006.  Plaintiffs have alleged that G. Cui continued on as a director of New Century until June 2009: "G. CUI was a Director of NCS&T continuously between May 1997 and June 8, 2009."  (Doc. 1, ¶ 20.)

While it is true that a party may not rely on its own pleading to establish a triable issue of fact to oppose summary judgment, New Century does not need to do so.  G. Cui's central premise is undermined by his own trial testimony, given under oath in the state court litigation, New *Century Sci & Tech, et al. vs. Carson Cheng, et al.*, Los Angeles Superior Court Case No. BC374648.  Testifying in March 2009, G. Cui himself admitted that he was *presently* both an officer and director of New Century:

-14-

Q:   Do you currently hold any positions at New Century Sci & Tech?

A:   Yes.

Q:   And what are those positions?

A:   The president of this company.

(Bell Decl., ¶ 9, Ex. 17 at 2:16-20).

Q:   Mr. Cui, during what period of time were you on the Board of Directors for New Century Sci & Tech?

A:   Ever since the company was formed, I have always been a member of the Board.

(Bell Decl., ¶ 9, Ex. 17 at 121:4-8; Zelkind Decl., Ex. 4 at 57:6-12).

Hence, the foundational proposition of G. Cui's argument (that G. Cui ceased holding positions of responsibility with New Century in 2006) is squarely contradicted by G. Cui's own sworn testimony.  The prior statements of the moving party may be used by the responding party to establish a triable issue of fact upon a motion for summary judgment.  *Hopkins v. Andaya,* 958 F.2d 881, 886 (9th Cir. 1992) (A conflicting statement of the moving party in medical records "is competent evidence that the district court may consider under Rule 56(c).").

A jury could reasonably believe G. Cui's sworn statements that his tenure as director and officer of New Century extended well into 2009.  Hence, the applicable legal standard for denial of a summary judgment motion has been met.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  Accordingly, it would be improper for the Court to grant summary judgment based on the proposition that G. Cui's tenure ended in 2006.

/ / /

**2.**      **There Is A Triable Issue As To Whether G. Cui Committed**

### Acts Of Wrongdoing Against New Century

G. Cui argues that "Plaintiffs cannot prevail on Count X because Plaintiffs admit that Shandong, where G. Cui is an officer, supplied AIM only *after* it stopped selling to New Century." (Def. Motion at 7) (emphasis original). This argument fails on several grounds.

First, as noted above, it assumes a 2006 cutoff date that is contradicted by the evidence. SIET supplied AIM with goods, including infringing goods, as late as June 2007. (*See* Bell Decl., ¶ 5).

Second, the evidence recounted above suggests that G. Cui continued his support of AIM and its activities long after the strategic demise of SIET through his control of Aim Sport's replacement supplier, Qingdao. That entity purports to be majority-owned by G. Cui's girlfriend Hong Wang. (Zelkind Decl., Ex. 20 at 25:9-26:12). At her deposition Ms. Wang had a remarkably sketchy understanding of her own enterprise. She was unable to provide such basic information as its street address (*Id.* at 18:4-24), the cost of her shares (*Id.* at 26:17-23), the decade in which she acquired her interest (*Id.* at 27:14-28:2), how the company takes orders (*Id.* at 29:6-12), or its approximate number of customers (*Id.* at 29:13-25). She could not estimate its volume of sales (*Id.* at 33:11-34:4) or recall what type of goods it sells. (*Id.* at 33:3-10 and 41:8-42:10). It is transparently clear that she is an "owner" in name only. Accordingly, G. Cui's breach of duties toward New Century is not limited to his period with SIET; a reasonable inference arises that SIET was merely moved aside for the present supplier Qingdao and that G. Cui continues to pull the levers from behind the scenes to this day. As noted above, the Court must indulge all reasonable inferences in favor of the nonmoving party.

Finally, G. Cui's post-SIET liability toward New Century may also be founded upon his direct support of AIM. AIM itself claimed to be an offshoot of SIET. (Zelkind Decl., Ex. 7). It is operated by his daughter Y. Cui. (*Id.*, Ex.

1 at 9:24-10:6). Under these circumstances, it would stretch credulity to suggest that there is no inference that G. Cui has considerable influence over AIM in its efforts to take sales from New Century.

G. Cui has failed to meet his burden to show that there is no evidence of his actions causing harm to New Century.

### 3. G. Cui's Assertion That Plaintiffs "Should Have Raised Concerns" In The 2007 Patent Case is Unsupportable And Frivolous

As a final argument for summary judgment on the fiduciary duty claim, defendant G. Cui proposes that because there was prior patent-related litigation between New Century and AIM, the Plaintiffs "clearly could and should have raised any concerns there." (Def. Motion at 7). Notably, G. Cui does not show that either he or SIET was a defendant in the earlier case against AIM.

It is revealing that the Defendants fail to offer even a single citation to authority for this "could have and should have sued earlier" principle.[4] (*Id.* at 7). Nor do they advance any coherent argument as to why a plaintiff in a prior case should be obliged to sue additional defendants on similar claims on pain of forfeiting those claims if it fails to do so. The assertion is clearly a "throw-away" and should be treated by the Court as such.

———————————————

[4] The principle cannot fall under the rubric of *res judicata* since that doctrine only prevents a plaintiff from suing on claims that were brought or should have been brought in subsequent litigation between the same parties.

"The rules of *res judicata*, as the term is sometimes sweepingly used, actually comprise two doctrines concerning the preclusive effect of a prior adjudication. The first such doctrine is 'claim preclusion,' or true *res judicata*. It treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.' [...] The second doctrine, collateral estoppel or issue preclusion,' recognizes that suits addressed to particular claims may present issues relevant to suits on other claims. In order to effectuate the public policy in favor of minimizing redundant litigation, issue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties." (18 Wright, Miller, *et al.*, FED. PRACTICE & PROCEDURE, Jurisdiction § 4402 (2d ed.).)

-17-

## VI.  Y. AND G. CUI ARE PERSONALLY LIABLE FOR PATENT INFRINGEMENT

Y. Cui and G. Cui have been actively inducing patent infringement, acts for which their role as corporate officers does not provide a shield. "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C.§ 271(b). "[C]orporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement *regardless* of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil." *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990).  Thus, Y. and G. Cui are personally liable for patent infringement.

### A.    Y. and G. Cui Knowingly Induced Infringement

To establish liability for induced infringement under section 271(b), a patent holder must prove that defendants "actively and *knowingly* aid[ed] and abett[ed] another's direct infringement." *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1305 (Fed. Cir. 2006) (emphasis original); *Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S.Ct. 2060, 2068, 179 L. Ed. 2d 1167 (2011). Here, Y. and G. Cui actively and knowingly induced AIM, Qingdao, and its employees to directly infringe the Patents-in-Suit.

Y. Cui was aware of the patents-in-suit. (Zelkind Decl., Ex. 1 at 97:16-104:2; Cheng Decl., ¶¶ 5-9). With this knowledge, Y. Cui actively and knowingly caused AIM and its employees to use, sell, offer to sell, and import the infringing products. Y. Cui personally ordered and imported the infringing products from China. (Zelkind Decl., Ex. 1 at 89:21-90:2, Ex. 2 at 158:18-159:4). Y. Cui also personally offered to sell and sold AIM's infringing products at trade shows and elsewhere. (Cheng Decl., ¶ 24). Likewise, as managing director of AIM, Y. Cui is in charge of the company's day to day operations. (Zelkind Decl., Ex. 1 at 122:14-19, Ex. 2 at 24:16-19, Ex. 3 at

47:25-48:1). In this role, she actively directs and supervises AIM's sales staff's direct infringement, including personally recording all of AIM's sales of infringing products into AIM's computer system. (Zelkind Decl., Ex. 1 at 122:14-19, Ex. 2 at 48:20-49:4 and 50:9-15, Ex. 3 at 22:2-18, 43:22-44:12, 47:25-48:1, 64:2-11, and 71:5-11). Thus, Y. Cui actively and knowingly aided and abetted AIM's and its employees' direct infringement.

Likewise, G. Cui induced Qingdao and its employees to directly infringe the patents-in-suit. Like his daughter, G. Cui was aware of the patents-in-suit. (Zelkind Decl., Ex. 4 at 77:9-14, 83:13-24, 87:6-13, and 95:24-96:2); Cheng Decl., ¶¶ 5-9). With this knowledge, G. Cui actively and knowingly caused Qingdao and its employees manufacture and import the infringing products. (Cheng Decl., ¶ 26).

Sometime in 2007, Y. and G. Cui formed Qingdao to assume the role of SIET as the supplier of infringing goods to AIM. (Cheng Decl., ¶ 25). Qingdao's ability to step into SIET's shoes to instantly supply AIM with the products that infringe Plaintiffs' patents resulted from G. Cui's involvement in running Qingdao's operation. G. Cui's knowledge of the Chinese manufacturing industry and connections in China were critical. Y. Cui did not have the knowledge or the necessary connections. G. Cui was the individual responsible at Qingdao for directing the production and importation of infringing goods for resale by AIM and, therefore, actively inducing infringement. (Cheng Decl., ¶ 26).

**B.** **Y. and G. Cui Had The Specific Intent To Induce Infringement Of The Patents-in-Suit**

Inducement requires proof that the alleged infringer "possessed specific intent to encourage another's infringement." *DSU Med.,* 471 F.3d at 1306. Y. and G. Cui possessed the specific intent to encourage AIM's, SIET's, and its employees' direct infringement of the patents-in-suit. Direct evidence of intent

is not required; rather, circumstantial evidence is sufficient. *Id.* at 1306. Here, there is ample evidence to prove that Y. and G. Cui had the specific intent to infringe Plaintiffs' patents.

As discussed above, Y. and G. Cui secretly started a competing company, Cheng Decl., ¶ 10, which they directed all their actions specifically to misappropriating Plaintiffs' intellectual property. (*Id.*, ¶¶ 10-13). They secretly formed a company, which they named NcStar, Inc. – copying Plaintiffs' trademark. (*Id.*, ¶ 11). They made replicas of Plaintiffs' products and copied Plaintiffs' photographs in their catalog. (*Id.*, ¶¶ 13 and 23). Y. and G. Cui were actively and primarily involved in every one of these activities.

As discussed above, Y. Cui personally offered to sell and sold AIM's infringing products, directed and supervised AIM's sales staff's direct infringement, and imported the infringing products. (Zelkind Decl., Ex. 1 at 122:14-19 and 89:21-90:2, Ex. 2 at  48:20-49:4, 50:9-15, and 158:18-159:4, Ex. 3 at 22:2-18, 43:22-44:12, 47:25-48:1 64:2-11, and 71:5-11; Cheng Decl., ¶ 24). Moreover, as managing director of AIM, Y. Cui directed AIM's day-to-day infringing sales activities and operations. (Zelkind Decl., Ex. 1 at 122:14-19, Ex. 2 at 24:16-19, Ex. 3 at 47:25-48:1). G. Cui personally runs Qingdao's operation. G. Cui is the individual responsible at Qingdao for directing the production and importation of infringing goods for resale by AIM. (Cheng Decl., ¶ 26).

Corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement *regardless* of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil." *Manville Sales Corp.,* 917 F.2d at 553. Here, Y. and G. Cui have actively assisted AIM's and Qingdao's direct infringement by personally selling and importing the infringing products and directing the manufacture and sale of infringing products. Because Y. and G.

Cui knowingly induced infringement and possessed specific intent to encourage AIM's, Qingdao's, and their employees' direct infringement, they are personally liable under section 271(b).

### VII. CONCLUSION

Plaintiffs' unfair competition claim is not preempted because this claim includes additional elements not found in a cause of action for patent infringement and is not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law. Defendants are also not entitled to summary judgment on the breach of fiduciary duty claims. Further, Y. and G. Cui are personally liable for patent infringement. For all of these reasons, Defendants have not met their burden on summary judgment and this Court should deny Defendants' motion in its entirety.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  September 27, 2011  By:    /s/ Boris Zelkind
Michael K. Friedland
Paul A. Stewart
Boris Zelkind
Ian Jaquette

Attorneys for Plaintiffs Carson Cheng and New Century Sci & Tech, Inc.

-21-

**CERTIFICATE OF SERVICE**

I, Boris Zelkind, certify that on September 27, 2011, I presented the within **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF PREEMPTION AND LACK OF EVIDENCE** to the Clerk of Court for filing and uploading to the ECF system which will send notification to the following:

Norbert Stahl
STAHL LAW FIRM
2 Meadowsweet Lane
San Carlos, CA  94070
Telephone:  (650) 802-8800
Facsimile:  (650) 802-8484
nstahl@patentlawservice.com

I declare under penalty of perjury that the foregoing statements are true and correct.

          /s/ Boris Zelkind
Boris Zelkind
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Attorneys for Plaintiffs, Carson Cheng and New Century Sci & Tech, Inc.

11877441

-22-